## IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS AND ST. JOHN

IN RE: EXCISE TAX LITIGATION      )
_____ )

APEX CONSTRUCTION COMPANY, INC., )
          Plaintiff,          )    Case No. 3:21-cv-0039
                      )
          v.          )
                      )
THE UNITED STATES VIRGIN ISLANDS, )
          Defendant.          )
_____ )

BLUEWATER CONSTRUCTION, INC., )
          Plaintiff,          )    Case No. 3:21-cv-0040
                      )
          v.          )
                      )
THE UNITED STATES VIRGIN ISLANDS, )
          Defendant.          )
_____ )

MSI BUILDING SUPPLIES INC., )
          Plaintiff,          )    Case No. 3:21-cv-0041
                      )
          v.          )
                      )
THE UNITED STATES VIRGIN ISLANDS, )
          Defendant.          )
_____ )

UNITED CORPORATION, )
          Plaintiff,          )    Case No. 3:21-cv-0043
                      )
          v.          )
                      )
THE UNITED STATES VIRGIN ISLANDS, )
          Defendant.          )
_____ )

IMPEX TRADING INTERNATIONAL, INC., )
          Plaintiff,          )    Case No. 3:21-cv-0044
                      )
          v.          )
                      )
THE UNITED STATES VIRGIN ISLANDS, )
          Defendant.          )
_____ )

*In re: Excise Tax Litigation*
Memorandum Opinion
Page 2 of 30

_____
B&B MANUFACTURING, INC.,                )
                      **Plaintiff,**       )    **Case No. 3:21-cv-0052**
                               )
      **v.**                                )
                               )
**THE UNITED STATES VIRGIN ISLANDS,**    )
                   **Defendant.**       )
_____ )

ATTORNEYS:

**MICHAEL L. SHEESLEY, ESQ.**
MLSPC
ST. THOMAS, U.S. VIRGIN ISLANDS
      *FOR PLAINTIFFS APEX CONSTRUCTION COMPANY, INC., BLUEWATER CONSTRUCTION, INC., MSI BUILDING SUPPLIES, INC., UNITED CORPORATION, IMPEX TRADING INTERNATIONAL, INC., AND B&B MANUFACTURING, INC.,*

**JOSEPH A. DIRUZZO, ESQ.**
DIRUZZO & COMPANY
FT. LAUDERDALE, FLORIDA
      *FOR PLAINTIFFS APEX CONSTRUCTION COMPANY, INC., BLUEWATER CONSTRUCTION, INC., MSI BUILDING SUPPLIES, INC., UNITED CORPORATION, IMPEX TRADING INTERNATIONAL, INC., AND B&B MANUFACTURING, INC.,*

**ARIEL M. SMITH-FRANCOIS, ESQ.**
**JULIE ANNE BEBERMAN, ESQ.**
VIRGIN ISLANDS DEPARTMENT OF JUSTICE
ST. THOMAS, U.S. VIRGIN ISLANDS
      *FOR DEFENDANT THE UNITED STATES VIRGIN ISLANDS.*

**<u>MEMORANDUM OPINION</u>**

**Molloy, Chief Judge**

    **BEFORE THE COURT** is the United States Virgin Islands' ("Government" or the "Virgin Islands") Motion for Judgment on the Pleadings.[1] For the reasons stated below, the Court will dismiss the Plaintiffs' Complaints in the above-captioned cases.

---

[1] *See* ECF No. 98. in *Apex Constr. Co., Inc. v. The United States Virgin Islands*, Case No. 3:21-cv-0039; ECF No. 97 in *Bluewater Constr., Inc. v. The United States Virgin Islands*, Case No. 3:21-cv-0040; ECF No. 98 in *MSI Bldg. Supplies, Inc. v. The United States Virgin Islands*, Case No. 3:21-cv-0041; ECF No. 98 in *United Corp. v. The United States Virgin Islands*, Case No. 3:21-cv-0043; ECF No. 98 in *Impex Trading Int'l, Inc., v. The United States Virgin Islands*, Case No. 3:21-cv-0044; and ECF No. 103 in *B&B Mfg. Inc. v. The United States Virgin Islands*, Case No. 3:21-cv-0052.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

The six plaintiffs in these cases, Apex Construction Company, Inc. ("Apex"), Bluewater Construction, Inc. ("Bluewater"), MSI Building Inc. ("MSI"), United Corporation ("United"), Impex Trading International, Inc. ("Impex"), and B&B Manufacturing, Inc. ("B&B") (collectively "the plaintiffs") are Virgin Islands businesses who regularly import goods into the territory. These six plaintiffs each brought the following claims in their respective cases.[2]

### 1.   Apex Construction Company, Inc.

On April 26, 2021, Apex filed a Complaint alleging that from January 26, 2016, to November 14, 2018, the Government of the Virgin Islands imposed excise taxes on goods that Apex imported into the Virgin Islands in violation of the Commerce Clause of the Constitution. As such, Apex now seeks a tax refund of $35,002.49 for the excise taxes the company paid during that period.

### 2.   Bluewater Construction, Inc.

Bluewater also filed its Complaint on April 26, 2021. Bluewater asserts virtually the same claims for a tax refund as Apex. The only difference between Apex's and Bluewater's claim is that Bluewater alleges the Government of the Virgin Islands unconstitutionally imposed excise taxes in the amount of $41,529.69 on its imported goods from January 26, 2016, to November 15, 2018.

### 3.   MSI Building Inc.

MSI filed its claim for a tax refund on May 3, 2021. MSI is seeking a refund of $665,725.83 for excises taxes paid on the same grounds as the other plaintiffs but for the period from April 6, 2016, through November 9, 2017, as well as the period from November 17, 2017, through October 31, 2018.

### 4.   United Corporation

United filed its Complaint seeking a tax refund for excise taxes on May 6, 2021. United's Complaint seeks a tax refund of $523,554.18 for excise taxes paid from March 1, 2016, through December 2, 2018. Like the other plaintiffs, United alleges it is entitled to a

---

[2] *See* ECF No. 1 in *Apex*, Case No. 3:21-cv-0039; *Bluewater*, Case No. 3:21-cv-0040; *MSI*, Case No. 3:21-cv-0041; *United*, Case No. 3:21-cv-0043; *Impex*, Case No. 3:21-cv-0044; *B&B Mfg.*, Case No. 3:21-cv-0052.

tax refund because the Government of the Virgin Islands imposed excise taxes on the company in violation of the Commerce Clause of the Constitution.

### 5. Impex Trading International, Inc.

On May 17, 2021, Impex filed its Complaint seeking a tax refund of $128,210.86 for excise taxes the company paid from November 20, 2017, through November 26, 2018. Again, like the other plaintiffs, Impex believes it is entitled to a tax refund because Impex asserts that the Government of the Virgin Islands imposed excise taxes on its imported goods from November 20, 2017, through November 26, 2018, in violation of the Commerce Clause of the Constitution.

### 6. B&B Manufacturing, Inc.

The last of the six plaintiffs to file, B&B Manufacturing, filed its Complaint seeking a refund on June 18, 2021. B&B believes it was unconstitutionally required to pay $116,260.95 in excise taxes to the Government of the Virgin Islands on goods it imported from January 22, 2018, through October 27, 2018. B&B Manufacturing's basis for relief is the same as all the other plaintiffs discussed herein. B&B believes the Virgin Islands imposed excise taxes on its imported goods in violation of the Commerce Clause of the Constitution.

In each of the plaintiffs' respective Complaints, they allege that "[t]his Court has jurisdiction over this action pursuant to 48 U.S.C. § 1612(a), and 28 U.S.C. § 1331[,]" however, the plaintiffs do not specify how their respective claims arise under either Section 1612(a) or Section 1331. They simply assume the jurisdictional basis is self-evident from the rest of the Complaint.

On October 15, 2023, the Virgin Islands filed an amended motion to dismiss in each case wherein the Virgin Islands asserted that the plaintiffs' respective claims were all barred by the applicable statute of limitations. *See* ECF No. 76.[3] On January 8, 2024, the Court denied the Government's motion without reaching the merits. *See* ECF No. 92. The Court held that the Virgin Islands' motions to dismiss on statute of limitations grounds were procedurally

---

[3] For the sake of expedience, all ECF citations herein shall be made to the docket of *B&B Mfg., Inc. v. United States Virgin Islands*, Case No. 3:21-cv-0052 unless otherwise noted. All complaints in this matter are substantively identical, as are the motions to dismiss, the oppositions, and their replies. Therefore, the Court's analysis of the motion in *B&B Mfg., Inc. v. United States Virgin Islands*, Case No. 3:21-cv-052, is equally applicable to the similarly filed motions in the remaining above-captioned cases.

barred under Rule 12(g)(2) because the Virgin Islands had already filed a motion to dismiss earlier in each of these cases. *See id.*

Thereafter, the Virgin Islands filed the instant motions for judgment on the pleadings on January 19, 2024, in each of the above-captioned cases. The plaintiffs all filed opposition briefs to the instant motions on February 2, 2024, to which the Virgin Islands filed replies on March 1, 2024.[4]  With the matters now fully briefed, the Virgin Islands' motions to dismiss are ripe for review and resolution.

## II.    LEGAL STANDARD

A motion for judgment on the pleadings may be made "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). "A motion for judgment on the pleadings should be granted if the movant establishes that 'there are no material issues of fact, and he is entitled to judgment as a matter of law.'" *Zimmerman v. Corbett*, 873 F.3d 414, 417 (3d Cir. 2017) (quoting *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 220 (3d Cir. 2005)). Similar to the motion to dismiss standard, when reviewing a motion for judgment on the pleadings, the Court "must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) (quoting *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290-91 (3d Cir. 1988)).

"A motion for judgment on the pleadings may be granted based on a statute of limitations defense if 'the pleader's allegations leave no doubt that an asserted claim is time-barred.'" *US Bank Tr. Nat'l Ass'n as Tr. for VRMTG Asset Tr. v. Tenpenny*, 659 F. Supp. 3d 62, 72 (D. Me. 2023) (quoting *LaChappelle v. Berkshire Life ins.*, 142 F.3d 507, 509 (1st Cir. 1998) and citing *Rivera-Gomez v. Castro*, 843 F.2d 631, 632 (1st Cir. 1988)); *see Robinson v. SE Penn. Trans. Auth.*, 572 F. Supp. 3d 136, 152 (E.D. Pa. 2021) (granting judgment on the pleadings on statute of limitations grounds); *United States v. Cephalon, Inc.*, 159 F. Supp. 3d 550, 555 (E.D. Pa. 2016).

## III.    ANALYSIS

---

[4] The plaintiffs consented to the Virgin Islands' request for a two-week extension to the response deadline. (ECF No. 108.) As such, the Virgin Islands' response on March 1, 2024, was timely filed.

In the instant motions, the Virgin Islands seeks to dismiss the plaintiffs' claims on the basis that the claims are time-barred by the applicable statute of limitations. *See* ECF No. 103. The Virgin Islands implicitly argues that since the claims purportedly arise under federal law, the three-year territorial statute of limitations for a territorial tax refund cause of action does not apply. Instead, the Virgin Islands argues that the applicable statute of limitation for a Commerce Clause cause of action applies. In making that argument, the Virgin Islands attempts to refute the plaintiffs' contention that they may bring their Commerce Clause claim directly under the Constitution, given that Section 1983 is an available procedural vehicle for such claims. (ECF No. 104 at 3.) The Virgin Islands maintains that no private right of action exists directly under the Commerce Clause in circumstances such as these where the plaintiffs are not seeking to prospectively prevent economic protectionism but rather are attempting to vindicate their own individual rights by relying on a prior judgment to obtain a tax refund.

Because the Virgin Islands believes there is no implied cause of action for a tax refund directly under the Commerce Clause, it argues that the plaintiffs must, therefore, rely on 42 U.S.C. § 1983 to vindicate their individual rights. According to the Virgin Islands, where Section 1983 is available, "plaintiffs must invoke its protection" rather than asking the Court to imply some new cause of action directly from the Constitution itself. *See* ECF No. 104 at 12. Thus, because Section 1983 is an available means for the plaintiffs to pursue their Commerce Clause claims, the Virgin Islands contends that the Court must construe the plaintiffs' claims as Section 1983 causes of action subject to the applicable statute of limitations for such claims. In the Virgin Islands, the applicable statute of limitations for a Section 1983 claim is two years. *See id.* at 16. Therefore, since all six plaintiffs in this case filed their claims more than two years after the claims began to accrue, the Virgin Islands contends that the plaintiffs' claims are now time-barred and must be dismissed. *See id.*

## A. Plaintiffs' Preliminary Arguments Regarding the Court's Ability to Consider the Virgin Islands' Instant Motion

### i. *The Law of Case Doctrine Does Not Foreclose a Statute of Limitation Challenge at This Juncture.*

In their respective oppositions, the plaintiffs oppose the Virgin Islands' motion for judgment on the pleadings on several grounds. First and foremost, the plaintiffs argue that the law of the case doctrine forecloses the Virgin Islands' instant argument that the plaintiffs' claims are barred by the applicable statute of limitations. The plaintiffs maintain that, on appeal, the Third Circuit has already conclusively determined that "this is not a Section 1983 case; instead, it is a tax refund case brought under 33 V.I.C. § 1692." ECF 105 at 4. Accordingly, since the Third Circuit rejected the theory that plaintiffs' claims are brought pursuant to Section 1983, the plaintiffs argue that, by implication, the Third Circuit effectively determined the applicable statute of limitations to be applied in this case, assuming that the applicable period for a Section 1983 action is two years and the applicable limitation period for an action pursuant to 33 V.I.C. § 1692 is three years.[5] Consequently, since the plaintiffs reaffirm that their respective causes of action are tax refund claims brought pursuant to 33 V.I.C. § 1692, the plaintiffs argue there can be no dispute that their claims are timely given that the parties agree that all of the claims were brought within three years.

Indeed, on the appeal, the Third Circuit concluded that the plaintiffs brought their respective claims pursuant to 33 V.I.C. § 1692 rather than Section 1983. *See Apex Constr. Co., Inc. v. United States Virgin Islands*, No. 22-2675, No. 22-2676, No. 22-2677, No. 22-2678, No. 22-2679, No. 22-2680, 2023 WL 5287668, at *2 (3d Cir. Aug. 17, 2023) ("Appellants did not bring § 1983 damages actions; rather, they each opted to file a tax refund suit under V.I. Code Ann. tit. 33, § 1692."). This determination by the Third Circuit likely forecloses the Virgin Islands' theory that the plaintiffs' claims should be properly characterized as Section 1983 causes of action. *See PDX N., Inc., v. Comm'r New Jersey Dep't of Lab. & Workforce Dev.*, 978 F.3d 871, 882 n.10 (3d Cir. 2020) ("Courts apply the law of the case doctrine when their prior decisions in an ongoing case either expressly resolved an issue or necessarily resolved it by

---

[5] *See Estate of Melendez v. G.V.I.*, Civ. No. 1:09–cv–00009, 2010 WL 2991045, at *2 (D.V.I. Jul. 26. 2010) ("The Third Circuit has held that claims brought under 42 U.S.C. § 1983 in the Virgin Islands are subject to a two-year statute of limitation provided for in 5 V.I.C. § 31(5)(A), the Virgin Islands statute of limitations for personal injury claims.") (citing *Callwood v. Questel*, 883 F.2d 272, 274 (3d Cir. 1989)); *see also* 33 V.I.C. § 1181 ("Claim for credit or refund of an overpayment of any internal revenue tax imposed by this subtitle or the Virgin Islands income tax law in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was required to be filed. . . .").

implication.") (quoting *United Artists Theatre Cir. v. Twp. of Warrington*, 316 F.3d 392, 397–98 (3d Cir. 2003) (emphasis and internal citation omitted)).

However, the problem with strictly applying the law of the case doctrine here is that after the Third Circuit's decision concluding that the claims, in this case, arise under 33 V.I.C. § 1692, the plaintiffs have since abandoned the theory that their claims are only brought pursuant to Section 1692 and at times tried to recharacterize, at least some of their claims as not only *arising* under the Constitution but being *brought as a cause of action* directly under the Constitution.[6] In other words, the plaintiffs want the law of the case doctrine to be conclusive as to the nature of their claims when it comes to the Virgin Islands' argument but not when it comes to their own arguments regarding their basis for jurisdiction and the applicable statute of limitations. But this kind of "have your cake and eat it too" approach to the litigation is simply improper, particularly given that it now appears the plaintiffs' respective Complaints assert two separate causes of action.

While it is true that the plaintiffs are the masters of their own complaints and may freely assert any valid and legally cognizable claims in the complaint, the plaintiffs are not permitted to vacillate between different characterizations of a claim as it suits them without amending the complaint. *See The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1913) ("Of course the party who brings a suit is master to decide what law he will rely upon . . ."); *cf. Whitmire v. Victus Ltd.*, 212 F.3d 885, 888 (5th Cir. 2000) (determining that a party may not "retroactively create subject matter jurisdiction"). Therefore, because the plaintiffs now argue that their claims are also brought directly under the Constitution, the Court is not persuaded that the law of case forecloses all arguments regarding the characterization of the plaintiffs' claims and, by implication, the applicable statute of limitations for those claims.

---

[6] The Court notes that the plaintiffs have been able to leave their argument for jurisdiction hazy at best because the Complaint itself is ambiguous as to the basis for subject-matter jurisdiction. The plaintiffs merely assert that the Court has subject matter "jurisdiction over this action pursuant to 48 U.S.C. § 1612(a), and 28 U.S.C. § 1331. (ECF No. 1 at 1.) The plaintiffs do not provide any explanation for how their claims fall under Section 1612(a) or Section 1331, and thus, the Court must give these claims additional scrutiny. *See Virgilio v. Motorola, Inc.*, 307 F. Supp. 2d 504, 512 (S.D.N.Y. 2004) ("a court may, and should, test representations and characterizations drafted into the complaint in order to assure itself that a plaintiff has not, through artful but hollow pleading, brought before a federal court a claim that is not, in fact, within the proper jurisdiction of the federal courts.").

Since the characterization of at least some of the plaintiffs' claims remain in doubt, and there has otherwise been no decision on the merits regarding any statute of limitations issues in these cases,[7] the applicable statute of limitations for these alleged direct constitutional claims remains an open question.[8]

### ii. *Offensive Non-Mutual Collateral Estoppel Does Not Foreclose the Virgin Islands' Statute of Limitations Challenge.*

Additionally, the plaintiffs contend that the doctrine of offensive non-mutual collateral estoppel forecloses the Virgin Islands' statute of limitations arguments in light of this Court's decisions on related issues in *Reefco Serv. Inc., v. G.V.I.*, Civ. No. 2014-110. While courts are generally hesitant to allow a party to utilize the doctrine of offensive non-mutual collateral estoppel under any circumstances,[9] courts have found that the use of the doctrine is particularly inappropriate when a party seeks to enforce the doctrine in litigation against the government or a governmental entity. *See United States v. Mendoza*, 464 U.S. 154, 162 (1984) ("[N]onmutual offensive collateral estoppel simply does not apply against the government[.]"); *Harris v. Martin*, 834 F.2d 361, 365 (3d Cir. 1987) ("[T]he only possible basis for preclusion would have been by application of offensive nonmutual collateral estoppel, a doctrine the Supreme Court has held inapplicable in suits against the government."); *Hercules Carriers, Inc. v. Claimant State of Fla., Dept. of Transp.*, 768 F.2d 1558, 1579 (11th Cir. 1985) (holding "the rationale outlined by the Supreme Court in *Mendoza* for

---

[7] Although the Court has previously issued orders in these cases denying the Virgin Islands' motion to dismiss based on the theory that the claims were barred on statute of limitations grounds, the Court denied the motions to dismiss on procedural grounds. (ECF No. 92.) The Court, therefore, never reached the merits of whether any of the plaintiffs' claims were barred by the applicable statute of limitations.

[8] As will be explained below, if the law of case doctrine mandates the Court to conclude that any claims asserted by the plaintiffs must be characterized as 33 V.I.C. § 1692 claims, then yes, the statute of limitation question is conclusively resolved in the plaintiffs' favor by the Third Circuit characterization of the claim. What the plaintiffs fail to appreciate, however, is that if there are no federal claims here, then there is no basis for federal subject matter jurisdiction in this Court over the territorial tax refund claims because the Court lacks original federal subject matter jurisdiction over the territorial claims.

[9] *See Acevedo-Garcia v. Monroig*, 351 F.3d 547, 575 (1st Cir. 2003) (noting "the Supreme Court's apprehensive regard for non-mutual offensive collateral estoppel"); *Bifolck v. Philip Morris USA Inc.*, 936 F.3d 74, 84 (2d Cir. 2019) (noting the general "judicial wariness of nonmutual offensive collateral estoppel"); *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 248 (3d Cir. 2006) (highlighting that "the application of non-mutual offensive collateral estoppel presents a unique potential for unfairness").

not applying nonmutual collateral estoppel against the government is equally applicable to state governments"); *State of Idaho Potato Com'n v. G&T Terminal Packaging, Inc.*, 425 F.3d 708, 714 (9th Cir. 2005) (holding that the rationale in *Mendoza* supported the conclusion collateral estoppel could not be imposed against a state agency); *Nat'l Med. Enterprise, Inc. v. Sullivan*, 916 F.2d 542, 545 (9th Cir. 1990) ("Neither party disputes the well-established rule that nonmutual offensive collateral estoppel cannot be asserted against the government.") (citing *Mendoza*, 464 U.S. at 159-60); *Chambers v. Ohio Dept. of Human Servs.*, 145 F.3d 793, 801 n.14 (6th Cir. 1998) ("The same considerations set forth in *Mendoza* with respect to the federal government may apply to state governments."); *Tristani v. Richman*, 609 F. Supp. 2d 423, 451-52 (W.D. Pa. 2009) (collecting cases of courts concluding that offensive non-mutual collateral estoppel may not be imposed against state governmental entities.) (vacated in part on other grounds). Although the Third Circuit has not squarely addressed the question of whether offensive non-mutual collateral estoppel may be used against a state government[10] or, in this case, a territorial government, given the Sixth, Ninth, and Eleventh Circuit's decision on the matter, the Court finds it appropriate to extend the ruling in *Mendoza* to circumstances where a party attempts to use offensive non-mutual collateral estoppel against the Government of the Virgin Islands. *See G&T Terminal Packaging*, 425 F.3d 708, 714 (2005); *Hercules Carriers, Inc.*, 768 F.2d at 1578–79; *Chambers*, 145 F.3d at 801 n.14.

Just the federal government, the Government of the Virgin Islands is in a sufficiently different position than private parties when it comes to litigation. For instance, in *Mendoza*, the Court noted that federal government litigation often concerns legal questions of substantial public importance, which frequently involve interpreting the Constitution. It is no different for the Virgin Islands Government. Accordingly, "[s]tifling the litigation of

---

[10] The plaintiffs attempt to argue that *Nat'l R.R. Passenger Corp. v. Pennsylvania Pub. Util. Comm'n*, 288 F.3d 519 (3d Cir. 2002) implicitly supports the proposition that offensive non-mutual collateral estoppel can be utilized against state and territorial governments in this circuit. The Court disagrees with that interpretation. Based on the Court's reading of the case, particularly the portion referenced by the plaintiffs, the reason the court found collateral estoppel appropriate was precisely because the public utility commission remained free to "relitigate that issue with anyone else who hauls it into federal court." Therefore, if anything, *Nat'l R.R. Passenger Corp.*, implicitly supports the opposite contention that non-mutual collateral estoppel may not be used against a state or federal governmental entity. As for the Third Circuit's vague one-sentence passing reference to *Mendoza* in *Trade Waste Management Ass'n., Inc. v. Hughey*, the Court is both hesitant and skeptical of imputing meaning about the Third Circuit's understanding of the scope of offensive non-mutual collateral estoppel on that basis. *See* 780 F.2d 221, 222-23 (3d Cir. 1985).

constitutional issues with offensive, nonmutual collateral estoppel would therefore prevent the development and clarification of constitutional law." *Demaree v. Fulton Cty. Sch. Dist.*, 515 Fed. App'x 859, 863 (11th Cir. 2013). Moreover, just like the federal government, the Government of the Virgin Islands is generally involved in significantly more lawsuits than private parties, and given the nature of government lawsuits, governmental litigation frequently involves the same issues, just different parties. *See Mendoza* 464 U.S. at 159-60. Accordingly, the use of offensive non-mutual collateral estoppel has the potential to drastically limit the government's ability to litigate issues of public concern and use litigation as a tool to develop and effectuate the shifting policy goals of the executive branch. Finally, the Court also recognizes that the Virgin Islands Government has limited resources— significantly less than the federal government. Thus, the burden of having to expend substantial portions of those limited resources to appeal virtually every unfavorable decision against the government in order to avoid foreclosing, further review would be particularly constraining on the territorial government. *See Hercules Carriers, Inc.*, 768 F.2d at 1579 (noting that avoiding forcing state government to abandon a policy of limited appeal was an important consideration for not allowing the use of offensive non-mutual estoppel against the state government).

In light of these analogous concerns, it is apparent to the Court that "whatever difference there may be between the litigation burdens faced by the [Government of the Virgin Islands] and the federal government . . . are, in the main, a matter of degree and not of kind." *Petchem, Inc. v. Canaveral Port Auth.*, No. 6:04-CV-1080, 2005 WL 1862412, at *3 (M.D. Fla. Aug. 2, 2005). Accordingly, the Court finds that the Virgin Islands should not be collaterally estopped from arguing any issues that were previously litigated in *Reefco Servs. Inc., v. G.V.I.*, Civ. No. 2014-110. Therefore, because the Court finds that neither the law of the case nor the doctrine of collateral estoppel bar the Virgin Islands from arguing that the plaintiffs' claims in this case are time-barred, the Court will consider the statute of limitation issue on the merits.

## B. The Applicable Statute of Limitations for Plaintiffs' Claims

For the purposes of this motion, there is no dispute as to when the plaintiffs' claims began to accrue and when those claims were filed in each of the above-captioned cases.

Therefore, the Virgin Islands does not challenge how long the statute of limitations ran before the plaintiffs' complaints were filed. *See Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*, 582 U.S. 497, 504–05 (2017) ("limitations periods begin to run 'when the cause of action accrues—that is, when the plaintiff can file suit and obtain relief.'").

According to the plaintiffs' respective Complaints, from 2016 to 2018, the Government of the Virgin Islands purportedly imposed excise taxes pursuant to 33 V.I.C. § 42 on the plaintiffs' imported goods in violation of the Commerce Clause. Since the statute of limitations begins to run when all the facts necessary to bring a cause of action have occurred, the latest date the plaintiffs' claims could have started to accrue was December 31, 2018—the last day the plaintiffs would have paid the excise taxes on imported goods during the period in question.[11] *See William A. Graham Co. v. Haughey*, 646 F.3d 138, 146 (3d Cir. 2011) (explaining statute of limitation begins to run as soon as all the facts necessary to bring a claim exist); *Anthony v. FirstBank Virgin Islands*, 58 V.I. 224, 231 (2013) ("[U]nder the 'continuing violations' doctrine, 'when a claim involves continuing or repeated conduct, the limitations period does not begin to run until the date of the last injury or when the [wrongful] conduct ceased.'") (quoting *Bluebeard's Castle, Inc. v. Hodge*, 51 V.I. 672, 685 (D.V.I. App. Div. 2009)) (internal level of quotations omitted). The plaintiffs each filed their claims between April 2021 and June 2021.[12] Accordingly, all of the plaintiffs' claims were filed more than two years after the claims began to accrue but less than three years after those claims accrued. Since the parties agree on the timing of the events, the only dispute between the parties regarding the statute of limitations is whether a two-year or a three-

---

[11] December 31, 2018, is the latest accrual date because, as a general rule, claims begin to accrue when the plaintiff knew or should have known of the injury that forms the basis of the claim alleged in the complaint. Here, the plaintiffs did know or should have known of the purported constitutional injury as soon as the tax became due or at least when they paid the claim. *See William A. Graham Co. v. Haughey*, 646 F.3d 138, 146 (3d Cir. 2011). Since the excise taxes at issue are paid upon arrival or manufacture of the goods in the Virgin Islands, the plaintiffs should have been aware of the purported unconstitutional taxation, at the latest, by the last day of December 2018. Tax Structure Booklet of the U.S. Virgin Islands, https://bir.vi.gov/content/booklets/tax_Structure_2021-01-31.pdf. As such, their constitutional claims began to accrue at the time the taxes were due. *See ANZ Sec., Inc.*, 582 U.S. at 504–05 ("limitations periods begin to run 'when the cause of action accrues—that is, when the plaintiff can file suit and obtain relief.'").

[12] *See supra* note 2.

year limitation period applies to the plaintiffs' claims.[13] If the limitation period is three years, the Virgin Islands does not contest the claims are timely.[14] However, if the applicable limitation period is two years, the Virgin Islands believes the entirety of the plaintiffs' claims are time-barred.

The plaintiffs have continually argued that the relevant statute of limitation period is three years. The plaintiffs claim they are bringing their tax refund claims pursuant to 33 V.I.C. § 1692, and, therefore, the three-year limitation period for Virgin Islands tax refund claims under 33 V.I.C. § 1181 is the appropriate limitation period to apply to all the claims in this case. *See* ECF No. 77 (plaintiffs highlighting that this "is a tax refund case brought under 33 V.I.C. § 1692.").[15] If the plaintiffs faithfully maintained the position throughout these proceedings that their claims are brought *exclusively* pursuant to 33 V.I.C. § 1692, there would be no dispute that the appropriate limitation period is three years, thereby making the plaintiffs' claims timely. The problem, however, is that the plaintiffs have not maintained that position. Instead, they have argued that they have claims that are brought pursuant to 33 V.I.C. § 1692 as well as claims brought directly under the Commerce Clause of the Constitution. *See* ECF No. 86 at 5-7. In fact, when the Court inquired into the basis for federal subject matter jurisdiction in this case, the plaintiffs insisted that this Court could not dismiss their claims for lack of federal question jurisdiction because of what plaintiffs perceive to be well-established precedent allowing them to bring a Commerce Clause claim directly under the Constitution. *See id.* If one of the plaintiffs' bases for federal question jurisdiction in this case is that a tax refund claim may be brought directly under the Constitution, that theory necessarily insists that the plaintiffs have brought at least one claim directly under the

---

[13] Although no tolling arguments were raised by either party, the Court notes that there is no basis for tolling the limitation period here either. There is no exhaustion requirement for a direct constitutional claim, and there has been no assertion that equitable tolling principles apply.

[14] The Virgin Islands does not make any alternative argument that even if the statute of limitations is indeed three years for the claims in these cases that any portion of the plaintiffs' claims would still be untimely.

[15] In their respective opposition briefs, the plaintiffs' only argument for why the limitation period for their claims should be the limitation period provided under 33 V.I.C. § 1181 is because their claims constitute tax refund claims. However, the plaintiffs offer no explanation for why a territorial statute of limitation period should apply to their federal constitutional claims. While there may be a potentially sound basis for doing so, the plaintiffs offer no principled reason here.

Constitution. Therefore, in order to determine whether any of the plaintiffs' claims are time-barred, the Court must analyze both the federal Commerce Clause claims as well as the plaintiffs' territorial law claims to ensure that all the claims in this case meet the requisite limitation period for such causes of action.

### i. Commerce Clause Claims Brought Directly Under the United States Constitution are Untimely.

Accepting the plaintiffs' argument that they each have at least one claim that does not arise under the Constitution via 33 V.I.C. § 1692 but rather is a cause of action brought directly under the Constitution, then the applicable substantive law governing those direct constitutional claims is, of course, federal law, not territorial law.[16] The Court must, therefore, look to federal law to determine the appropriate statute of limitation period for the plaintiffs' direct Commerce Clause claims. *See Kingvision Pay-Per-View, Corp., Ltd. v. 898 Belmont, Inc.*, 366 F.3d 217, 220 (3d Cir. 2004) ("Determining the statute of limitations period for activity governed by a federal statute [or the Constitution] is a question of federal law.").

Because causes of action directly under the Constitution are judge-made, no federal statute prescribes the limitations period for filing such claims.[17] *See Indus. Constructors. Corp. v. U.S. Bureau of Reclamation*, 15 F.3d 963, 968 (10th Cir. 1994). When federal law is silent as to the statute of limitations period applicable to a particular federal cause of action, the Court is generally expected to rely on the most analogous state law statute; however, because the characterization of a claim for the purposes of borrowing a statute of limitations is ultimately a question of federal law, courts may borrow the statute of limitation for analogous federal causes of action under appropriate circumstances. *See Wilson v. Garcia*,

---

[16] The Court will address the claims brought pursuant to 33 V.I.C. § 1692 later in this opinion.

[17] Although the plaintiffs do not argue this point, the Court notes that it is of no significance that the claims at issue are constitutional as opposed to statutory in nature. Constitutional claims are still subject to a reasonable statutory time bar. *See Hair v. United States*, 350 F.3d 1253, 1260 (Fed. Cir. 2003) (quoting *Block v. North Dakota*, 461 U.S. 273, 292 (1983) ("A constitutional claim can become time-barred just as any other claim can. Nothing in the Constitution requires otherwise.")); *DeMalherbe v. Int'l Union of Elevator Constructors*, 449 F. Supp. 1335, 1350 (N.D. Cal. 1978) ("Although a cause of action inferred from the Constitution is not literally a statutory cause of action, constitutional and statutory causes of action are analogous in the context of statutes of limitations.").

471 U.S. 261, 269-70 (1985) (abrogated on other grounds by statute); *Costello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 158 (1983); *898 Belmont, Inc.*, 366 F.3d at 220 (citing *North Star Steel Co. v. Thomas*, 515 U.S. 29, 34 (1995)). In circumstances where the statute of limitations period for a constitutionally implied cause of action is at issue, federal courts have routinely adopted the statute of limitations for 42 U.S.C. § 1983 actions since Section 1983 is analogous to a constitutionally implied cause of action as both provide a cause of action for the deprivation of constitutional rights. *See Ashcroft v. Iqbal*, 556 U.S. 662, 675-76 (2009) (noting that a constitutional "implied cause of action is the 'federal analog to suits brought against state officials under Rev. Stat. § 1979, 42 U.S.C. § 1983.'") (quoting *Hartman v. Moore*, 547 U.S. 250, 254 n.2 (2006)); *Sanchez v. United States*, 49 F.3d 1329, 1330 (8th Cir. 1995) ("Because of the similarities between section 1983 and *Bivens* actions, we hold, in accordance with the other circuits, that *Bivens* actions are governed by the same statute of limitations as 42 U.S.C. § 1983 actions.") (collecting cases)[18]; *Indus. Constructors Corp.*, 15 F.3d at 968 ("[A] *Bivens* action, like an action brought pursuant to 42 U.S.C. § 1983, is subject to the statute of limitations of the general personal injury statute in the state where the action arose."); *Van Strum v. Lawn*, 940 F.2d 406, 408-10 (9th Cir. 1991); *Ross v. Fed. Bureau of Prisons*, No. 3:20-CV-43 (GROH), 2022 WL 2398525, at *3–4 (N.D.W. Va. Mar. 10, 2022), report and recommendation adopted, No. 3:20-CV-43, 2022 WL 2400041 (N.D.W. Va. July 1, 2022) ("Because *Bivens* is the federal equivalent to an action under § 1983, federal courts have consistently extended the state general personal injury statute of limitations to *Bivens* cases, as well as § 1983 claims."); *cf. Van Tu v. Koster*, 364 F.3d 1196, 1198 (10th Cir. 2004) ("*Bivens* actions generally borrow the general personal injury limitations statute in the state where the action arose."). The Court agrees that adopting the statute of limitation for Section 1983 claims is the appropriate approach here for several reasons.[19]

---

[18] The Eight Circuit in *Sanchez v. United States* cited to the following cases to support its conclusion that *Bivens* actions are governed by the same statute of limitations as 42 U.S.C. § 1983 actions: *Kurinsky v. United States*, 33 F.3d 594, 599 (6th Cir. 1994), *cert. denied*, 514 U.S. 1082 (1995); *Industrial Constructors Corp. v. United States Bureau of Reclamation*, 15 F.3d 963, 968–69 (10th Cir. 1994); *Van Strum v. Lawn*, 940 F.2d 406, 410 (9th Cir. 1991); *Bieneman v. City of Chicago*, 864 F.2d 463, 469–70 (7th Cir. 1988), *cert. denied*, 490 U.S. 1080 (1989); *Chin v. Bowen*, 833 F.2d 21, 23–24 (2d Cir. 1987).

[19] Although the Court is seemingly borrowing the statute of limitations from 42 U.S.C. § 1983 for the purposes of this claim, the Court is still ultimately relying on the general rule set out by the Court in *Wilson* and *Thomas*

First, by aligning the statute of limitations period for constitutionally implied cause of actions with the limitation period for Section 1983 actions, the Court ensures a uniform approach to constitutional claims not otherwise covered by federal statute, thereby providing clarity and certainty as to the time parties must file claims involving violations of their constitutional rights in the Virgin Islands. *See Chin v. Bowen*, 833 F.2d 21, 22-23 (2d Cir. 1987) (concluding that since the policies underlying Section 1983 and direct constitutional causes of action are essentially the same, the same standards, including the applicable statute of limitation, should be the same as well). *Cf. Demery v. City of Youngstown*, 818 F.2d 1257, 1258 (6th Cir. 1987) (noting that the "federal interest in uniformity, certainty, and the minimization of unnecessary litigation" all favored a single statute of limitations for all Section 1983 claims).

Second, not only does adopting Section 1983's statute of limitations create uniformity between Section 1983 causes of action and implied constitutional causes of action, the limitation period chosen here also creates internal consistency and clarity among direct constitutional claims. *See Van Strum*, 940 F.2d at 408–10 (noting that when determining the appropriate statute of limitations for a federal cause of action, the Supreme Court highlighted "the need for a uniform, generic, easily appliable limitations period within each state" for the given cause of action). Given the plethora of potential claims a party could assert directly under the Constitution, a generalized limitation period for implied constitutional causes of action is in the federal interest.[20]

Similar to Section 1983 claims, implied constitutional causes of action are capable of encompassing a number of diverse topics and subtopics. Therefore, applying a different statute of limitation depending on the nature or, in this case, the remedy sought, would lead

and applying the relevant state law statute of limitations in this case—namely, the general two-year statute of limitations for personal injury actions in the Virgin Islands. The Court primarily analogizes to 42 U.S.C. § 1983 because the Court believes the reason for using the limitation period for personal injury claims in Section 1983 actions applies equally to an implied cause of action directly under the Constitution.

[20] The Court acknowledges that there are very few recognized direct constitutional causes of action for damages. However, since a statute of limitation challenge may arise before the district court reaches the merits of whether the purported cause of action is valid, the scope of potential direct constitutional claims available at this early stage is potentially much broader than the causes of actions courts typically recognize are available directly under the Constitution.

to the proliferation of applicable statute of limitations for a single type of action, resulting in confusion amongst future litigants regarding what limitation period would apply, and naturally, the utilization of scarce resources on "useless litigation [ ] regarding collateral matters." *Banks v. Chesapeake & Potomac Tel. Co.*, 802 F.2d 1416, 1433 (D.C. Cir. 1986). Additionally, if the Court agreed with one party's proposed state analogue over another's, the losing party might infer that the decision on the appropriate statute of limitations for their claim was results-oriented thereby potentially undermining the belief that the case had been adjudicated fairly. A consistent rule among all constitutional claims arising directly under the Constitution ensures that, moving forward, parties are confident about the filing deadlines for these types of causes of action and thus can ensure that their claims are adjudicated on their merits.

Conversely, if the Court adopted the plaintiffs' approach and applied the Virgin Islands' statute of limitations for tax refund claims simply because the remedy sought in this case is a tax refund,[21] the limitation period for implied causes of action under the Constitution would routinely vary based on a plaintiff's characterization of the claim in a given case. This is obvious even if the Court limits its consideration to Commerce Clause challenges. While here, it might theoretically make sense to apply the Virgin Islands' statute of limitations for tax refund claims to the plaintiffs' Commerce Clause claims, that is likely not true in future cases. Future litigants bringing a Commerce Clause claim are not necessarily going to challenge a tax statute, let alone seek a tax refund as a remedy. Indeed, many Dormant Commerce Clause challenges similar to the one brought here, seek declaratory relief, injunctive relief, and damages or some combination of the three. When multiple forms of relief are sought, will the Court be expected to determine the core remedy sought, and then apply a limitation period based on that determination? Of course not. Such an approach would not only be excessively tedious, but unpredictable since the applicable statute of limitations for any direct Commerce Clause cause of action would hinge on the

---

[21] While the plaintiffs do not expressly state the reason that the Court should apply the Virgin Islands' three-year statute of limitations for tax refunds, the Court has to assume that it is because the plaintiffs believe that 33 V.I.C. § 1181 is the most analogous state-law statute of limitation for their Commerce Clause claims because the plaintiffs all request a tax refund as the proposed remedy. There is no other apparent justification for the Court to apply a Virgin Islands statute of limitation period for a federal claim arising directly under the Commerce Clause.

attorneys' ability to characterize the underlying facts and request for relief in such a way so that the claims would fall under the most advantageous statute. The plaintiffs' approach would be unworkable because in every case, plaintiffs would simply have to hope that the Court ultimately agreed on which statutory analogue applied to the given constitutional claim without having a clue beforehand if he or she had timely filed the claims. Thus, by tying the limitation period for implied constitutional claims to Section 1983, the Court can avoid a significant amount of confusion and needless litigation regarding the timeliness of similarly implied constitutional claims. *See Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 618 (8th Cir. 1995) (highlighting the federal interest in uniformity and certainty for statutes of limitations among analogous federal statutes).

Since the Court has determined that if any of the plaintiffs' claims are brought directly under the Commerce Clause, the statute of limitations for those claims is the limitation period for Section 1983 claims, the Court must simply apply the appropriate limitation period for Section 1983 causes of action in the Virgin Islands.

As the Supreme Court has made clear, all Section 1983 actions are subject to the statute of limitations governing personal injury actions in the state where the Section 1983 action is brought. *See Owens v. Okure*, 488 U.S. 235, 249-50 (1989) (holding that in a Section 1983 action, the federal court "should borrow the general or residual statute for personal injury actions" in the state in which the action is brought). In the Virgin Islands, the general statute of limitations for personal injury actions is two years. *See* 5 V.I.C. § 31(5)(A); *see also Estate of Melendez v. G.V.I.*, Civ. No. 1:09–cv–00009, 2010 WL 2991045, at *2 (D.V.I. Jul. 26. 2010) ("The Third Circuit has held that claims brought under 42 U.S.C. § 1983 in the Virgin Islands are subject to a two-year statute of limitation provided for in 5 V.I.C. § 31(5)(A), the Virgin Islands statute of limitations for personal injury claims.") (citing *Callwood v. Questel*, 883 F.2d 272, 274 (3d Cir. 1989)). Therefore, the statute of limitations period for both Section 1983 actions and implied causes of action made directly under the Constitution is two years in this jurisdiction.[22] Since the plaintiffs' claims began to accrue at least by

---

[22] The Court notes that even if it were required to utilize a state rather than federal analogue, the Court's conclusion regarding the appropriate statute of limitations would not be affected. The applicable statute of limitations for a Section 1983 action—which the Court is now applying to the instant claims—is the limitation period that applies to Virgin Islands personal injury actions. Therefore, in effect, the Court's decision today

December of 2018, and the claims were not filed until at least April 2021, in each of the above-captioned cases, any of the plaintiffs' claims brought directly under the Constitution are time-barred by the applicable two-year statute of limitations.[23]

### ii. Plaintiffs' Claims Brought Pursuant to 33 V.I.C. § 1692 are Timely.

However, as made evident by the Third Circuit's earlier opinion in this case, the plaintiffs have not only brought claims directly under the Constitution. The plaintiffs are each also bringing territorial tax refund claims pursuant to Title 33 Section 1692 of the Virgin Islands Code. Unlike the plaintiffs' federal Commerce Clause causes of action, these territorial claims are not time-barred. As noted by the plaintiffs, claims brought pursuant to 33 V.I.C. § 1692 have a statute of limitations period of three years. *See* 33 V.I.C. § 1181.[24] Therefore, given that the plaintiffs all filed their respective complaints within three years of their claims accruing, there is no dispute that their territorial law claims fall within the applicable statute of limitations for territorial tax refund claims.

## C. No Federal Subject Matter Jurisdiction over the Territorial Claims

Although the claims are timely, the Court is not persuaded these remaining territorial law claims are properly before this Court. As indicated earlier in this case, the Court has had concerns about the Court's subject matter jurisdiction over the plaintiffs' claims. Given that the plaintiffs' direct constitutional claims have been dismissed as time-barred by the applicable statute of limitations, and subject matter jurisdiction is a constitutional

---

adheres to the general rule that, in the absence of a federal statute of limitations for the cause of action asserted, the Court should apply the most analogous state law statute since the Court is ultimately relying on the territorial statute of limitations for personal injury actions to determine the limitation period for the plaintiffs' direct constitutional claims. The Court is simply relying on the reasoning in the Section 1983 line of cases to explain why the most analogous territorial statute of limitations is the Virgin Islands statute of limitations for personal injury actions.

[23] Since the Court concludes that the applicable statute of limitations for implied causes of action directly under the Constitution and Section 1983 claims both bar the plaintiffs from bringing their claims in this case, the Court need not consider whether the proposed implied cause of action is available where Supreme Court has already recognized Section 1983 as an available mechanism for pursuing rights violated under the Commerce Clause.

[24] *See* 33 V.I.C. § 1181 ("Claim for credit or refund of an overpayment of any internal revenue imposed by this subtitle. . . shall be filed by the taxpayer within 3 years from the time the return was required to be filed (determined without regard to any extension of time) or 2 years from the time the tax was paid, whichever of such periods expires the later[.]").

prerequisite for a federal court to hear a claim, the Court's basis for jurisdiction over the remaining territorial claims must be evaluated once more. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006) (explaining that a district judge has an "independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party") (citations omitted); *United States v. Cotton*, 535 U.S. 625, 630 (2000) ("Because subject-matter jurisdiction involves a court's power to hear a case, it can never be forfeited or waived."); *Samuel–Bassett v. KIA Motors America, Inc.*, 357 F.3d 392, 397 (3d Cir. 2004) ("The party asserting jurisdiction bears the burden of showing that at all stages of the litigation the case is properly before the federal court."); *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 77 (3d Cir. 2003) (concluding a "court can raise *sua sponte* subject-matter jurisdiction concerns").[25]

Assuming the plaintiffs indeed intended to bring separate tax refund claims directly under the Constitution, there are two ways the plaintiffs may now establish federal subject matter jurisdiction for their remaining territorial tax refund claims brought pursuant to 33 V.I.C. § 1692. The first option is to demonstrate that the Court has original jurisdiction over these territorial law claims, notwithstanding that the claims are brought pursuant to a Virgin Islands statute. *See Grable & Sons Metal Products v. Darue Eng'g*, 545 U.S. 308 (2005). Under this approach, the plaintiffs' territorial law claims may still "arise" under federal law or the Constitution if the claims satisfy the four-factors test set out by the Supreme Court in *Grable*.

Alternatively, since the plaintiffs appear to have asserted a federal claim directly under the Constitution, the second way the plaintiffs may establish federal subject matter jurisdiction for their territorial claims is to show that the Court can and should continue to exercise supplemental jurisdiction over these remaining territorial law claims notwithstanding the dismissal of the federal claims. *See* 28 U.S.C. § 1367; *Carlsbad Tech., Inc.*

---

[25] The Third Circuit has indicated that although the Court may raise the issue of federal subject matter jurisdiction *sua sponte*, the parties should receive notice and an opportunity to be heard on the issue before rendering a decision. *See Neiderhiser v. Borough of Berwick*, 840 F.2d 213, 216 n.6 (3d Cir. 1988). Earlier in this case, the Court ordered the parties to provide supplemental briefing to assist the Court in determining whether it had federal subject matter jurisdiction over the plaintiffs' claims. Accordingly, because the Court has already asked the parties to specifically brief the issue of federal subject matter jurisdiction, the Court is satisfied that the plaintiffs have been given an adequate opportunity to be heard on this issue. Therefore, the Court does not believe that a hearing or additional supplemental briefing is necessary before the Court renders its decision on its authority to exercise jurisdiction over the plaintiffs' claims.

*v. HIF Bio, Inc.*, 556 U.S. 635, 640 (2009). The Court will address each of these theories in turn to determine whether the Court's exercise of jurisdiction over the plaintiffs' remaining claims in this case is appropriate.

### i. *No Original Federal Subject Matter Jurisdiction Exists for the Plaintiffs' Territorial Law Claims.*

The Court will first analyze whether it has original subject matter jurisdiction over the plaintiffs' remaining territorial law claims. Federal courts are "courts of limited jurisdiction." *Mims v. Arrow Financial Services, LLC*, 565 U.S. 368, 376 (2012) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 378 (1994)); *see Mansfield, C. & L.M. Ry. Co. v. Swan*, 111 U.S. 379, 383 (1884). Therefore, a federal district court may not exercise jurisdiction over a claim unless specifically authorized by Congress. *See id.*; *see also Hertz Corp. v. Friend*, 559 U.S. 77, 84 (2010) (explaining that Article 3 does not give the federal jurisdiction over cases but rather authorizes Congress to grant such authority to the federal courts). Because Congress must provide the federal courts with authority to hear a case, "a plaintiff may invoke the jurisdiction of a federal court only pursuant to a statutory grant of authority to adjudicate the asserted claim." *Clinton County Com'rs v. U.S. E.P.A.*, 116 F.3d 1018, 1021 (3d Cir. 1997) (citing *Kokkonen*, 511 U.S. at 377 and *In re Morrissey*, 717 F.2d 100, 102 (3d Cir. 1983)). The plaintiffs purport to rely on 28 U.S.C. § 1331 and 48 U.S.C. § 1612(a),[26] the statutes giving this Court federal question jurisdiction.[27] Section 1331 provides the

---

[26] To be clear, the plaintiffs do not rely on 48 U.S.C. § 1612(a) in an effort to claim that this Court may hear the claims pursuant to the Court's authority to hear territorial income tax cases because, as noted previously, the taxes at issue are excise taxes not income taxes. *See* ECF No. 1 and ECF No. 86; *see also* 48 U.S.C. § 1612 ("The District Court of the Virgin Islands shall have exclusive jurisdiction over all criminal and civil proceedings in the Virgin Islands with respect to the *income tax laws* applicable to the Virgin Islands.") (emphasis added); *cf. Willis v. People*, 71 V.I. 789, 836 (2019) (noting that the District Court's exclusive income tax jurisdiction could not reasonably extend to non-income tax issues like gross receipts). Therefore, the Court's tax jurisdiction is, of course, not a basis for federal subject matter jurisdiction. Instead, the plaintiffs reference 48 U.S.C. § 1612(a) because Section 1612(a) gives this Court the ability to exercise federal question jurisdiction as provided for in 28 U.S.C. § 1331. See 48 U.S.C. § 1612 ("The District Court of the Virgin Islands shall have the jurisdiction of a District Court of the United States[.]").

[27] None of the plaintiffs contend that federal diversity jurisdiction exists over their respective claims because there is no diversity between the plaintiffs and the defendant. *See Postal Tel. Cable Co. v. Alabama*, 155 U.S. 482, 487 (1894) ("A State is not [itself] a citizen, And, under the judiciary acts of the United States, it is well established that a suit between a State and a citizen . . . is not between citizens of different States.); *Louisiana v. Union Oil Co. of California*, 458 F.3d 364, 366 (5th Cir. 2006) (opinion that "in an action where a state is a party, there can be no federal jurisdiction on the basis of diversity of citizenship because a state is not a citizen for

federal courts with general federal question jurisdiction "over all civil actions *arising under* the Constitution, Laws, or treaties of the United States." 28 U.S.C. § 1331 (emphasis added). A plaintiff's claim may arise under federal law in one of two ways. "Most directly, a case arises under federal law when federal law creates the cause of action asserted." *Gunn v. Minton*, 568 U.S. 251, 257 (2013) (citing *American Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260 (1916) ("A suit arises under the law that creates the cause of action.")). "In those cases, federal courts unquestionably have federal subject-matter jurisdiction." *Gardiner v. St. Croix Dist. Governing Bd. Of Directors*, 859 F. Supp. 2d 728, 732 (D.V.I. 2012) (citing *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 809 (1986)).

While the "creation" method is the primary means of establishing general federal question jurisdiction, the Supreme Court has acknowledged that there is a "'special and small category' of cases in which arising under jurisdiction still lies" even though the plaintiff's cause of action is based on state law, or in this instance, territorial law. *Gunn*, 568 U.S. at 257 (quoting *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006)); *see Goldman v. Citigroup Global Markets Inc.*, 834 F.3d 242, 249 (3d Cir. 2016). For general federal question jurisdiction to exist over a state law claim, the claim must contain a federal issue that is: "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258; *see Grable*, 545 U.S. at 314 (setting out the four-part test for the first time). The Supreme Court has stressed that federal question jurisdiction requires "more than a federal element 'to open the arising under' door," and therefore, it is a rare case that a state law claim satisfies all four of the *Grable* factors. *Empire Healthchoice Assur., Inc.*, 547 U.S. at 701 (quoting *Grable*, 545 U.S. at 313); *Evergreen Square of Cudahy v. Wisconsin Hous. & Econ. Dev. Auth.*, 776 F.3d 463, 466 (7th Cir. 2015) (noting the *Grable* inquiry "rarely results in a finding of federal jurisdiction") (citing *Hartland Lakeside Joint No. 3 Sch. Dist. v. WEA Ins. Corp.*, 756 F.3d 1032, 1033 (7th Cir. 2014)).

---

purposes of diversity jurisdiction."); *Pickering-George v. Off. of Vital Stat. Virgin Islands Dep't of Health*, No. 2010-cv-0079, 2012 WL 12986188, at *1 (D.V.I. Dec. 6, 2012).

In this case, irrespective of whether the plaintiffs may be able to show that a federal issue is necessarily raised and actually disputed,[28] the Court is unpersuaded that the federal issues involved in these territorial law claims are substantial.

For a state or territorial claim to satisfy the *Grable* test, the claim must "not only [involve] a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Grable*, 545 U.S. at 314. Therefore, the fact that a "federal issue is significant to the particular parties in the immediate suit" is insufficient as "that will always be true when the state claim 'necessarily raises' a disputed federal issue. . . ." *Gunn*, 568 U.S. at 260. The disputed issue must significantly impact the "federal system as a whole." *Gunn*, 568 U.S. at 264; *see also Merrell Dow Pharms., Inc.*, 478 U.S. at 813 (noting that "the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction."). Generally, a federal issue will be substantial to the federal system as a whole only where the suit "challenges the action of a federal actor," involves "'a new interpretation of federal law which will govern a large number of cases,'" or otherwise would "measurably affect the federal government" in some meaningful way. *Tyngsboro Sports II Solar, LLC v. Nat'l Grid USA Serv. Co.*, 88 F. 4th 58, 67-68 (1st Cir. 2023) (quoting *AMTAX Holdings 227, LLC v. Tenants' Dev. II Corp.*, 15 F.4th 551, 558 (1st Cir. 2021) ("The common thread that runs through all such suits is that they entail some appreciable measure of risk to the federal sovereign.") (quoting *Mun. of Mayaguez v. Corporación Para el Desarollo del Oeste, Inc.*, 726 F.3d 8, 14 (1st Cir. 2013))).

Still, a district court must consider the totality of the circumstances when deciding whether a federal issue is indeed substantial. Over time, the federal courts have established several factors to consider when weighing the substantiality of the federal issue. *See Inspired Dev. Gr., LLC v. Inspired Prod. Gr., LLC*, 938 F.3d 1355, 1364 (Fed. Cir. 2019); *Dominion Pathology Labs., P.C. v. Anthem Health Plans of Va., Inc.*, 111 F. Supp. 3d 731, 737 (E.D. Va. 2015); *MHA LLC v. Healthfirst, Inc.*, 629 F. App'x 409, 413 n.6 (3d Cir. 2015). First, for a

---

[28] The plaintiffs' territorial law claims very likely raise a federal question given that a "state-law claim 'necessarily' raises federal questions where the claim is affirmatively 'premised' on a violation of federal law." *N.Y. ex rel. Jacobson v. Wells Fargo Nat'l Bank N.A.*, 824 F.3d 308, 315 (2d Cir. 2016) (quoting *Grable*, 545 U.S. at 314). In the instant matter, the plaintiffs' claims are premised on an alleged violation of the Commerce Clause of the Constitution. Since the alleged constitutional violation is actually in dispute between the parties, the first two *Grable* factors appear to be satisfied.

substantial federal issue to be present, the issue should usually be one of pure law that will have a dispositive effect on the case as opposed to being "fact-bound and situation-specific." *Empire Healthchoice Assur., Inc.*, 547, U.S. at 700-01; *see Goldman*, 834 F.3d at 257; *Stout v. Novartis Pharms. Corp.*, Civ. Nos. 08–856, 07–2774, 09–0095, 09–916, 07–1657, 07–655, 2009 WL 4576130, at *3 (D.N.J. Nov. 30, 2009) ("The Supreme Court has been quite clear that the dispute must be over legal interpretation of federal law, not facts or state law.") (citing *Grable*, 545 U.S. at 313). Second, the issue is more likely to be substantial if the court's resolution of the issue will "'be controlling in numerous other cases.'" *Gunn*, 568 U.S. at 262 (quoting *Empire Healthchoice Assur., Inc.*, 547 U.S. at 700). Lastly, the federal issue is more likely to be substantial where "the Government . . . has a direct interest in the availability of a federal forum to vindicate its own administrative action." *Grable*, 545 U.S. at 315; *see Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180 (1921) (concerning the constitutional validity of the federal government's bonds); *City of Greensburg v. Wisneski*, 75 F. Supp. 3d 688, 697 (W.D. Pa. 2015).

After considering the relevant substantiality factors in light of the totality of the circumstances in this case, the Court does not believe the federal issue raised by the plaintiffs is ultimately substantial. As far as the Court can see, this particular tax dispute between private litigants and a territorial government will have little, if any, effect on the federal system as a whole.[29]

As evidenced by the arguments already raised in these initial stages of litigation, the plaintiffs' territorial law claims will ultimately require the Court to resolve a highly fact-specific dispute as opposed to resolving any pure issue of federal law, especially given that the Court has effectively resolved the applicable federal law issues in prior litigation. *See*

---

[29] When the Plaintiffs provided supplemental briefing to address the basis for federal subject matter jurisdiction in this case, the plaintiffs did not address the substantiality of the federal issue. Instead, the plaintiffs argued that the territorial law claims established a federal question simply because their claims necessarily raised a federal constitutional question. While that argument might have been viable twenty years ago, the *Grable* Court made unequivocally clear that more is required. The federal question must be substantial to the federal system as a whole. *See Grable*, 545 at 312-13 (clarifying that the *Smith* Court's statement "that a state-law claim could give rise to federal-question jurisdiction so long as it 'appears from the [complaint] that the right to relief depends upon the construction or application of [federal law]" has been subject to trimming so that arising under jurisdiction now only applies to state law claims that involve a substantial federal question) (alterations in the original) (quoting *Smith*, 255 U.S. at 199).

*Reefco Servs., Inc. v. G.V.I.*, Civil No. 2014-110, 2018 WL 4690366 (D.V.I. Sept. 28, 2018); *JDS Realty Corp. v. G.V.I.*, 824 F2d 256, 260-62 (3d Cir. 1987) *reversed on other grounds* by *G.V.I. v. JDS Realty Corp.*, 484 U.S. 999 (1988). In particular, in *Reefco Services*, this Court determined that essentially identical governmental enforcement of excise taxes on a local corporation importing goods to the Virgin Islands violated the Commerce Clause of the Constitution. *See Reefco Servs.*, 2018 WL 4690366 at 7. Therefore, the plaintiffs have not presented a novel issue of federal law that would require the federal court's specialized knowledge or expertise to resolve. *See Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290, 1299, 1300 (11th Cir. 2008) (explaining that a fact-specific application of an already clarified federal law or rule does not support federal question jurisdiction under *Grable*). The plaintiffs are not trying to strike down an existing tax statute as unconstitutional or enjoin the Virgin Islands from collecting excise taxes in an unlawful manner because other litigants have already accomplished those objectives with respect to 33 V.I.C. § 42. Instead, the plaintiffs simply seek to obtain a local tax refund under a theory that the Virgin Islands' prior means of collecting excise taxes found unconstitutional in *Reefco* was also unconstitutional as applied to the plaintiffs here. *See* ECF No. 1 ("In *Reefco Services*[,] this Court held that the Virgin Islands excise tax statute – 33 V.I.C. § 42 violated the Commerce Clause, that any excise tax assessed under Section 42 was improperly assessed, and that Reefco was entitled to a refund of those taxes. . . . Plaintiff now sues the Defendant for a refund of the excises that it paid to the Defendant during the years where the Defendant was interpreting and enforcing Section 42 in an unconstitutional manner."). Indeed, rather than arguing that there is some unique federal issue the Court must decide in this case, the plaintiffs contend that this Court's decision in *Reefco* is conclusive on the Commerce Clause issues implicated by their instant territorial law claims. *See* ECF No. 90. At 4-6 and ECF No. 105 at 9 (arguing that collateral estoppel should prohibit the Virgin Islands from challenging the constitutionality of administering the excise tax). Therefore, based on the plaintiffs' own theory of the case, the territorial claims do not involve an uncharted area of federal law necessitating clarification by a federal court. If the Court were to exercise jurisdiction over the claims, the Court would not be offering a new interpretation of federal law but instead would be applying the established precedent to the particular facts of this case. *See Adventure Outdoors Inc.*, 552

F.3d at 1300 (finding that a federal question was not substantial because the "meaning of the relevant federal law" was clear and not actually in dispute; only the application of the law to the facts was); *Bennett v. Sw. Airlines Co.*, 484 F.3d 907, 910 (7th Cir. 2007) (denying federal-question jurisdiction where "a fact-specific application of rules that come from both federal and state law rather than a context-free inquiry into the meaning of a federal law"); *Marren v. Stout*, 930 F. Supp. 2d 675, 691 (W.D. Tx. 2013) (concluding there was no federal question jurisdiction since the state court merely had to apply well-settled law); *Mahoney v. New Jersey*, No. CV 21-15952, 2022 WL 17324417, at *3 (D.N.J. Nov. 29, 2022) ("Thus, even though federal constitutional violations provide the basis for Plaintiffs' NJCRA claims, that alone does not confer jurisdiction on this Court"); *Griffin v. City of Newark*, No. 220CV17290KSHCLW, 2021 WL 6061661, at *7–8 (D.N.J. Mar. 31, 2021), report and recommendation adopted, No. CV2017290KSHCLW, 2021 WL 6049826 (D.N.J. Dec. 20, 2021) (declining to exercise federal question jurisdiction because plaintiff's vindication of federal constitutional rights pursuant to a state statute was "heavily fact-dependent" and "of little importance to the operation of the federal system itself."). Accordingly, this type of case is not beyond the purview of the territorial courts' capabilities. *See Yellen v. Teledne Continental Motors, Inc.*, 832 F. Supp. 2d 490, 499 (E.D. Pa. 2011) ("It is a fundamental premise of our federal system that state courts are 'competent to apply federal law, to the extent it is relevant [.]'") (quoting *Empire Healthchoice Assur., Inc.*, 547 U.S. at 701); *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 560 (6th Cir. 2007) ("We are mindful that state courts are generally presumed competent to interpret and apply federal law.") (citing *Zwickler v. Koota*, 389 U.S. 241, 245 (1967) ("During most of the Nation's first century, Congress relied on the state courts to vindicate essential rights arising under the Constitution and federal laws."); *cf. MHA LLC v. HealthFirst, Inc.*, 629 Fed. App'x 409, 414 (3d Cir. 2015) (noting that state courts are "plainly competent" to apply and interpret federal statutes relevant to a state law claim).

    Moreover, since these cases will have little to no effect on the federal government or federal officers, there is not a particularly strong interest in providing a federal forum, notwithstanding the constitutional issue raised. *See Barone v. Bausch & Lomb, Inc.*, 372 F. Supp. 3d 141, 151 (W.D.N.Y. 2019) ("Since this case 'does not call into question the validity

of a federal statute or the conduct of a federal actor,' it 'does not present the unusually strong federal interest required to qualify for the federal forum.'") (quoting *MHA LLC,* 629 Fed. App'x at 413 n.6). Accordingly, since the substantiality factor is not satisfied, the Court does not have original federal question jurisdiction over the plaintiffs' territorial law claims. *See Gunn*, 568 U.S. at 258 (explaining that a court may only exercise original federal question jurisdiction pursuant to *Grable* where all four factors have been satisfied).

### ii. The Court Will Decline to Exercise Supplemental Jurisdiction

Although a federal court may not have independent original subject matter jurisdiction over a claim, it may still exercise supplemental federal subject matter jurisdiction over a state or territorial law claim. Pursuant to 28 U.S.C. § 1367, the Court may exercise supplemental jurisdiction over a state or territorial law claim that shares a "'common nucleus of operative fact' with the claims that supported the district court's original jurisdiction." *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 308 (3d Cir. 2003) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)); *see also* 28 U.S.C. § 1367 ("in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to [the original jurisdiction claims] that they form part of the same case or controversy").

As noted above, the Court has original federal question jurisdiction over the plaintiffs' tax refund claim brought directly under the Commerce Clause of the Constitution. Therefore, so long as the territorial law claims have a common nucleus of operative facts to the federal claims, the Court is permitted to exercise jurisdiction over the plaintiffs' supplemental claims. There is no question both the federal and territorial law claims have a common nucleus of operative facts. The claims involve the same governmental conduct, and both the federal and territorial claims seek a tax refund for the same time period. Therefore, the Court is permitted to exercise jurisdiction over the remaining territorial law claim.

However, a federal court's exercise of supplemental jurisdiction is not mandatory but rather rests in the sound discretion of the district court. *See Kach v. Hose*, 589 F.3d 626, 650 (3d Cir. 2009) ("The decision to retain or decline jurisdiction over state-law claims is discretionary."); *De Asencio*, 342 F.3d at 308 ("It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right.") (quoting *Gibbs*, 383

U.S. at 726). Not only is the decision to decline to exercise supplemental jurisdiction discretionary, but Section 1367 also expressly provides the federal district courts with authority "to decline the exercise of supplemental jurisdiction if 'the district court has dismissed all claims over which it has original jurisdiction[.]'" *Id.* (quoting 28 U.S.C. § 1367(c)(3)) (citing *New Rock Asset Partners v. Preferred Entity Advancements, Inc.*, 101 F.3d 1492, 1507 n.11 (3d Cir. 1996)). Where federal claims are no longer viable, and the claims are dismissed before trial, the Third Circuit has held that the district courts should decline to exercise supplemental jurisdiction absent "extraordinary circumstances." *Shaffer v. Bd. of Sch. Dirs. of Albert Gallatin Area Sch. Dist.*, 730 F.2d 910, 912 (3d Cir. 1984) (quoting *Weaver v. Marine Bank*, 683 F.2d 744, 746 (3d Cir. 1982)) (additional level of citations omitted); *see also Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered ... will point toward declining to exercise jurisdiction over the remaining state-law claims.");

The Court sees no unique or compelling circumstances that would justify retaining jurisdiction over the plaintiffs' remaining territorial law claims. The federal claim has been dismissed well in advance of trial, and before the court has reached many of the substantive issues involved in these cases. *See Hall-Wadley v. Maintenance Dep't*, 386 F. Supp. 3d 512, 519 (E.D. Pa. 2019) ("Here, as the case has not progressed in federal court past the motion to dismiss stage, . . . the Court will decline to exercise supplemental jurisdiction over the remaining state law claims."); *Gautier-James v. Hovensa, LLC*, Civil Action No. 2006-106, 2023 WL 4532194, at *4 (D.V.I. July 12, 2023) (citing collecting cases in the Third Circuit refusing to exercise jurisdiction over supplemental state law claims notwithstanding a more developed state of litigation than we have here). And although there has been a non-de minimus amount of discovery in this case, the parties' efforts will not be in vain since they will be able to build off the work already done if the plaintiffs elect to reassert their tax refund claims in the local court.[30] *See Annulli v. Panikkar*, 200 F.3d 189, 203 (3d Cir. 1999)

---

[30] The Court notes that because the plaintiffs' territorial tax refund claims were all filed well within the three-year statute of limitations, and the statute of limitation period has been tolled during the entirety of the time the claims have been pending in federal court, the plaintiffs will not be time-barred from filing their tax refund claims in the Superior Court upon dismissal of this case. *See Artis v. District of Columbia*, 583 U.S. 71, 83-92 (2018).

("Although [Plaintiff] has spent a great deal of time engaged in discovery, as the Defendants point out, [Plaintiff] can use this evidence to pursue his state law claims" in the local court.); *see also Shaffer*, 730 F.2d at 912 ("This court has emphasized in the past that 'time already invested in litigating the state cause of action is an insufficient reason to sustain the exercise of pendent jurisdiction.'") (quoting *Weaver v. Marine Bank*, 683 F.2d 744, 746 (3d Cir. 1982) (abrogated by statute on other grounds)). Moreover, given that these are territorial tax refund claims brought against the territory itself, the Court believes that it is in the best interest of justice for the local courts to resolve the claim. *See Bluebeard's Castle, Inc. v. G.V.I.*, 321 F.3d 394, 401 (3d Cir. 2003) ("The tax system is, for the most part, a matter of local governance. And the territorial courts, mirroring state courts, have been given primary jurisdiction over local matters. Accordingly, although § 1401a adds a significant federal element to the Virgin Islands tax regime, it remains a local system—created, enforced, and adjudicated locally."); *Mardenborough v. McCollum*, Civil No. 2014-82, 2018 WL 3245047, at *5 (D.V.I. July 3, 2018); *cf. Willis*, 71 V.I. at 801 ("Stated plainly, the gross receipts tax provisions of the Virgin Islands Code are precisely the type of purely local laws enacted by the territorial legislature over which Congress intended to vest jurisdiction in the local courts.").[31] Thus, the interests of comity and judicial economy counsel against exercising supplemental jurisdiction over the remaining local claim. Accordingly, the Court will dismiss the remaining state law claims without prejudice to allow the plaintiffs to file their claims in the Superior Court.[32]

## IV.    CONCLUSION

To recap, the plaintiffs' federal law claims must be dismissed because those claims are barred by the applicable statute of limitation for causes of action brought directly under the Constitution. Additionally, although the plaintiffs' remaining territorial laws claims are

---

[31] The Court finds no reason to believe that excise taxes are no more of a local concern than gross receipt taxes.

[32] If a state law claim is originally brought in federal court and the federal court declines to exercise jurisdiction over the claim, the federal court, including the district court of the Virgin Islands, has no authority to remand such a claim to state court. *See Club Comanche, Inc. v. G.V.I.*, 278 F.3d 250, 261 (3d Cir. 2002) (citing *Moravian Sch. Advisory Bd. v. Rawlins*, 70 F.3d 270, 274 (3d Cir. 1995) (explaining that just like other federal courts, the District Court of the Virgin Islands no longer has authority to transfer territorial law claims to local court). Therefore, the Court must dismiss the remaining territorial law claims.

timely, the Court lacks original federal subject matter jurisdiction over the territorial claims. Finally, the Court does not believe it is appropriate to continue to exercise supplemental jurisdiction over the remaining territorial law claims, given the dismissal of the federal law claims and the lack of compelling circumstances that would support the Court's continued exercise of supplemental jurisdiction. Therefore, the Court will dismiss the territorial law claims as well. An accompanying order of even date will follow.

Dated: July 26, 2024                    */s/ Robert A. Molloy*
                                        **ROBERT A. MOLLOY**
                                        **Chief Judge**